IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00102-CNS-SKC

CRAIG FAULHABER, on behalf of himself and others similarly situated,

Plaintiff,

v.

PETZL AMERICA, INC. d/b/a business as Petzl,

Defendant.

## ORDER

Before the Court is Defendant Petzl America, Inc.'s ("Petzl's") Motion to Dismiss (ECF No. 32) Plaintiff Craig Faulhaber's Amended Complaint (ECF No. 30), and Petzl's Motion to Strike the Class Action Allegations in Mr. Faulhaber's Amended Complaint (ECF No. 33). For the reasons set forth below, Petzl's Motion to Dismiss is GRANTED in part and DENIED in part, and Petzl's Motion to Strike is GRANTED.

## I. BACKGROUND[1]

As early as 1982, Petzl began manufacturing safety devices for rock climbers called "shunts" (ECF No. 30 at 3 ¶ 11). The retail company REI advertised Petzl's shunt (the "Shunt") as used for occasional self-belaying, a form of solo rock climbing (*Id.* at 3 ¶ 12). Petzl's Shunt was popular in the rock climbing community for self-belaying (*Id.* at 4 ¶ 13).

---

[1] The background facts are taken from the well-pleaded allegations in Mr. Faulhaber's Amended Complaint. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1247 n.1 (10th Cir. 2019).

In 2001, Lyon Equipment Ltd., a British company, was commissioned by the Health and Safety Executive, a United Kingdom governmental agency, to investigate devices used for rock climbing, including Petzl's Shunt (*Id.* at 4 ¶¶ 16-17). After conducting its investigation, the company concluded that the Petzl Shunt had several shortfalls, including the Shunt's potential safety failures when "only one rope is used" in rock climbing (*Id.* at 5, 6 ¶¶ 24, 27). The Petzl Shunt failed "every minimum working strength test" Lyon conducted during its safety investigation (*Id.* at 6 ¶ 29). After this investigation, including a safety test conducted by the International Rope Access Trade Association, and other incident reports regarding the Shunt's safety effectiveness in arresting climbers' falls, Petzl devised more specific guidance on how to use the Shunt (*See id.* at 7-8 ¶¶ 36-44).

In 2012, Petzl was "still specifically indicating" that the Shunt could be used for self-belaying. During sometime in 2017 or 2018, Petzl stopped providing instructions for use of the Shunt for self-belaying in its technical manuals (*Id.* at 8 ¶¶ 46-48). However, nowhere in the Shunt's technical manuals did Petzl specify that climbers should not use the Shunt for self-belaying due to any of its documented shortfalls (*Id.* at 8 ¶ 49). In 2017 or 2018, Petzl introduced a new version of the Shunt that it claimed was "purely a sport device" for traditional two-person belaying (*Id.* at 8 ¶ 50). REI later began marketing the Shunt's new version, consistent with Petzl marketing (*Id.* at 8-9 ¶¶ 52, 53). However, the "new" Shunt "appear[ed] to be identical" to the Shunt REI previously marketed and sold (*Id.* at 8 ¶ 51).

Petzl remains aware that the Shunt was still being used for solo belaying (*Id.* at 10 ¶ 59). For instance, many online reviews and online climbing forums of the Shunt described using it for top rope solo climbing (*Id.* at 10-11 ¶¶ 59-61, 63). One "Petzl-sponsored climber and author

expressly recommended" the Shunt as one of the best devices for self-belaying, noting that the Shunt has been used for decades to self-belay, and previously recommended by Petzl for this purpose (*Id.* at 10 ¶ 61). However, Petzl did not expressly or specifically warn against using the Shunt for self-belaying (*See, e.g., id.* at 11 ¶ 64). Petzl also provided "[g]eneral principles" for solo climbing with a fixed belay rope (*Id.* at 9 ¶ 54 (capitalization omitted)).

In August 2021, after consulting with a "Petzl Expert," who positively discussed the Shunt on his website and recommended the Shunt for fall arresting while top rope solo climbing, Mr. Faulhaber purchased a Shunt specifically for use during top rope solo climbing (*Id.* at 11-12 ¶¶ 66-67, 69-70). Mr. Faulhaber relied on the recommendations of the "Petzl Expert" and numerous online recommendations when deciding to purchase the Shunt (*Id.* at 12 ¶ 76). While climbing by himself in September 2021, Mr. Faulhaber fell 35 feet when the Shunt he used "completely failed" (*Id.* at 12 ¶¶ 75-77). The Shunt's failure was consistent with failures documented in earlier safety reports: Mr. Faulhaber's Shunt was "likely subjected to forces in excess of" of four kilonewtowns ("kN"), the amount of force Lyon Equipment identified as capable of deforming the Shunt's body, and an amount of force "consistent with normal fall arresting" (*Id.* at 10, 13 ¶¶ 58, 83).

As a result of his fall, Mr. Faulhaber suffered serious injuries, including bone fractures throughout his body and spine (*Id.* at 2 ¶ 4). The Shunt's failure was the type documented by safety reports and investigations regarding the Shunt (*Id.* at 13 ¶ 83). After falling, Mr. Faulhaber attempted to contact several Petzl employees and executives about the Shunt's failure. Petzl's Chief Operating Officer, Tom Adams, claimed he did not know that climbers were using the Shunt for climbing by themselves (*See, e.g.*, *id.* at 14 ¶¶ 88-91, 95).

Mr. Faulhaber is not the only Colorado resident to have been injured while using Petzl's

Shunt (*Id.* at 16 ¶¶ 99-100). Mr. Trevor Stuart, a Colorado resident, fell while using the Shunt in

West Virginia in November 2021, incurring serious injuries (*See id.* at 16 ¶¶ 100-101).

Mr. Faulhaber initiated this class action lawsuit in January 2022 (ECF No. 1). After Petzl

filed an initial motion to dismiss and the parties conferred regarding Mr. Faulhaber's responses

and amendments to his complaint, Mr. Faulhaber filed his Amended Complaint in April 2022 (*See,*

*e.g.*, ECF Nos. 26-27, 30). Petzl filed the instant Motion to Dismiss in May 2022 (ECF No. 32).[2]

The Motion is fully briefed.

## II. ANALYSIS

### A. Petzl's Motion to Dismiss

#### 1. Legal Standard

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the

entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation

omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and

interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on

its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim

is one that allows the court to "draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are

"so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff

---

[2] Petzl also filed a motion to strike Mr. Faulhaber's class action allegations in March 2022, then filed another motion
to strike the class action allegations after Mr. Faulhaber amended his complaint (ECF Nos. 18, 33).

has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## 2. Analysis

Having considered the Amended Complaint, Petzl's Motion to Dismiss and related briefing, and the relevant legal authority, the Court grants in part and denies in part Petzl's Motion to Dismiss.

Petzl contends that dismissal of Mr. Faulhaber's Amended Complaint is warranted for three reasons. First, that Ms. Faulhaber has not adequately pleaded claims under Colorado's products liability statute because he fails to allege a "lack of misuse" (*See* ECF No. 4 (capitalization omitted)). Second, that Mr. Faulhaber's Amended Complaint is "procedurally improper" (*Id.* at 7). And third, that Mr. Faulhaber fails to state claims for violation of the Colorado Consumer Protection Act ("CCPA") and breach of implied warranty (*See id.* at 7-12). The Court considers Petzl's arguments in turn.

### a. The Misuse Defense

Petzl essentially argues that Mr. Faulhaber—not Petzl—bears the burden of showing that the Amended Complaint has pleaded a lack of misuse, and that Mr. Faulhaber has not met his

burden of pleading a lack of misuse as required under Colorado's products liability statute (*See, e.g.*, ECF No. 32 at 6). Mr. Faulhaber contends that under Colorado products liability law, misuse is an affirmative defense, not an affirmative pleading requirement, and that Petzl has not met its burden of showing that the misuse defense bars Mr. Faulhaber's claims (*See* ECF No. 41 at 3). The Court agrees with Mr. Faulhaber.

First, Petzl cites several cases in support of the proposition that Mr. Faulhaber bears an affirmative duty to set forth a lack of misuse (*See* ECF No. 32 at 5-6 (collecting cases)). However, these cases concern the "innocent seller" provision of Colorado's products liability statutory regime, and whether plaintiffs have established that product sellers qualify as "manufacture[s]" for purposes of products liability claims. *See Mills v. FCA US, LLC*, No. 18-CV-01891-MSK-STV, 2018 WL 11386606, at *3 (D. Colo. Nov. 29, 2018); *see also* § 13-21-402(1).[3] The Court is not persuaded that interpretations of a different statutory provision regarding a defendant's role in manufacturing a product, or its knowledge of a product's defectiveness, necessarily means that Mr. Faulhaber bears the burden of affirmatively pleading a lack of misuse under the separate "Product Misuse" statutory provision. § 13-21-402.5 (capitalization added). Moreover, and contrary to Petzl's argument, the words 'commenced or maintained' [in the misuse statute] cannot properly be read as an indication that the [Colorado] General Assembly intended to abrogate the common law status of misuse as an *affirmative defense*." *See White*, 2016 WL 346862, at *4 (emphasis added); *see also* C.R.S. § 13-21-402.5 (stating that a products liability action "may not be commenced or maintained against a manufacturer" under certain conditions).

---

[3] Petzl does not dispute that Mr. Faulhaber has alleged that it was "the manufacturer" of the Shunt as defined under Colorado's products liability statute (ECF No. 32 at 4 (citation omitted)).

Fundamentally, "misuse" is a causation concept, and the Court agrees with Mr. Faulhaber that Colorado's products liability statute regime does not abrogate the common law regarding defendants' burden to establish misuse as an affirmative defense (*See* ECF No. 41 at 3). "A statute is not presumed to alter the common law except to the extent that such statute expressly provides." *Preston v. Dupont*, 35 P.3d 433, 440 (Colo. 2001), *as modified on denial of reh'g* (Dec. 3, 2001). There is nothing in § 13-21-402.5 that "expressly abrogate[s] the common law regarding causation and misuse." *Heinrich*, 131 F. Supp. 3d at 1151. Therefore, "the Court will not infer that § 13-21-402.5 alters the common law regarding causation," which imposes the burden on Petzl to show misuse as an affirmative defense. *Id.*[4]

Second, to the extent that the parties dispute whether Mr. Faulhaber's claims may be "maintained" in light of the potential applicability of the misuse defense, this is a matter best resolved at the summary judgment stage or trial. *See, e.g., Nash v. Wal-Mart*, No. 15-CV-02330-RM-MEH, 2016 WL 10519158, at *12 (D. Colo. Dec. 5, 2016), *report and recommendation adopted as modified sub nom. Nash v. Wal-Mart Stores, Inc.*, No. 15-CV-02330-RM-MEH, 2017 WL 5188339 (D. Colo. Feb. 15, 2017). Accordingly, the Court declines to address whether the misuse defense applies to Mr. Faulhaber's claims at the motion to dismiss stage, and will address the misuse defense—should Petzl choose to raise its applicability—at a later stage of litigation.

### b. *Mr. Faulhaber's Amended Complaint*

Petzl argues that Mr. Falhaber's Amended Complaint is "procedurally improper" (ECF No. 32 at 7). Petzl appears to argue that dismissal of the Amended Complaint is warranted due to the

---

[4] Interestingly, Petzl argues that the misuse statute did not completely abrogate the common law, then cites *States v. R.D. Werner Co.*, 799 P.2d 427, 429 (Colo. App. 1990), for the proposition that misuse could "provide a complete *defense* to liability" (ECF No. 44 at 3 (quotations omitted) (emphasis added)).

timing of Mr. Falbaher's filing, as well as his failure to comply with D.C.COLO.LCivR 15.1 when filing the Amended Complaint. The Court disagrees with Petzl.

First, Petzl argues that Mr. Faulhaber did not file his Amended Complaint within twenty-one days after Petzl filed its first dismissal motion, and that Mr. Faulhaber did not seek an extension of the deadline for filing his Amended Complaint (ECF No. 32 at 7). As such, Petzl contends that Mr. Faulhaber's Amended Complaint was untimely filed under Federal Rule of Civil Procedure 15(a)(1)(B) (*Id.*).

Mr. Falhaber filed an unopposed motion for an extension of time to file his responses to Petzl's first dismissal motion and motion to strike Mr. Falhaber's class action allegations on April 5, 2022 (ECF No. 20). The Court granted this extension motion, making Mr. Faulhaber's responses to Petzl's dismissal motion due April 21, 2022 (ECF No. 21). Then, on April 12, 2022, the parties filed a stipulated motion to reset the case's deadlines and scheduling conference because, in part, Mr. Falhaber intended to file his Amended Complaint "on or before" April 21, 2022, and Petzl "request[ed] . . . extend[ing] all current deadlines" for 28 days "to allow [Petzl] to review it and then time for the parties to re-confer once [Petzl had] the opportunity" to review the Amended Complaint (ECF No. 26 at 2).

Nothing in the parties' stipulated motion or Petzl's Motion to Dismiss indicates that Petzl was prejudiced by the timing of Mr. Falhaber's Amended Complaint—which was filed on April 20, 2022, one day before the deadline for Mr. Faulhaber to respond to Petzl's dismissal motion (*See* ECF No. 30). Indeed, Petzl knew that Mr. Falhaber intended to respond to its motions, and learned six days later that Mr. Falhaber intended to respond by filing an amended complaint (*See* ECF Nos. 20, 26). Although Mr. Falhaber did not file a motion for leave to amend, the failure to

file a formal motion "is not always fatal" under Rule 15. *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999). In fact, Mr. Faulhaber made clear in an *unopposed motion* that he intended to respond to Petzl's dismissal motion by April 21, 2022. He ultimately did so by filing an Amended Complaint. For these reasons, the Court concludes that Mr. Falhaber's Amended Complaint is not "improper" under Rule 15, and declines Petzl's invitation to dismiss or strike it on procedural grounds (ECF No. 32 at 7-8). *See also Pike v. Lewis*, No. 20-CV-01179-CNS-MDB, 2022 WL 17091992, at *7 (D. Colo. Nov. 21, 2022) ("[Rule 15's] liberal standard for granting of motions for leave to amend unless the amendment inflicts undue prejudice on the non-moving party reflects the Court's underlying policy that pleadings should enable a claim to be heard on its merits." (citations omitted)).

Second, Petzl argues that Mr. Falhaber's Amended Complaint does not comply with D.C.COLO.LCivR 15.1 (ECF No. 32 at 7). The Court agrees that Mr. Falhaber's Amended Complaint does not comply with this Local Rule. For example, the Amended Complaint did not include an exhibit explaining what allegations were added or deleted from Mr. Falber's original complaint. *See* D.C.COLO.LCivR 15.1(a). However—given especially the liberal standard for granting leave to amend and the preferred policy for hearing claims on their merits—the Court "excuses [Mr. Falhaber], *in this instance only*, from submitting a redline comparison" alongside his Amended Complaint. *Wojdacz v. Presbyterian St. Lukes' Med. Ctr.*, No. 15-CV-2083-WJM-KLM, 2017 WL 4054212, at *4 n.4 (D. Colo. Sept. 14, 2017) (emphasis added). Therefore, Mr. Falhaber's failure to comply with the Local Rules in this one instance does not prevent the Court from assessing Mr. Falhaber's Amended Complaint and Petzl's Motion to Dismiss on the merits.

### c. Colorado Consumer Protection Act Claim

Mr. Faulhaber's CCPA claim against Petzl is based on two theories: that Petzl made false representations regarding the Shunt's safety and performance, and that Petzl omitted material information regarding the Shunt's shortfalls while selling it (ECF No. 30 at 24 ¶ 40). Petzl argues that Mr. Faulhaber's CCPA claim fails for five different reasons, including Mr. Faulhaber's failure to satisfy the requirements that Federal Rule of Civil Procedure 9(b) imposes on his CCPA claim (ECF No. 32 at 8-9). Mr. Faulhaber contends that his CCPA claim survives dismissal because certain Petzel experts, authorized retailers, and paid influencers made false representations regarding the Shunt, which ultimately caused Mr. Faulhaber's alleged injury, and well as that he has satisfied the pleading requirements for his CCPA claim based on both theories of false representations and material omissions (*See* ECF No. 41 at 8). The Court agrees with Petzl that Mr. Faulhaber has not satisfied the pleading requirements for his CCPA claim based on a theory of false representations, but has done so for his CCPA claim based on a theory of material omissions.

***Legal Standard for CCPA Claims.*** To set forth a plausible CCPA claim, a plaintiff must allege the following:

1. The defendant engaged in an unfair or deceptive trade practice;

2. The defendant engaged in this unfair practice in the course of its business;

3. The unfair or deceptive practice "significantly impacts" the public;

4. The plaintiff suffered an injury to a legally protected interest; and

5. The allegedly unfair or deceptive trade practice caused the injury.

*Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) (citation omitted). "If all elements of a CCPA claim are not met, the claim fails as a matter of law." *Donna v. Countrywide Mortg.*, No. 14-CV-03515-CBS, 2015 WL 9456325, at *3 (D. Colo. Dec. 28, 2015) (citations omitted).

To satisfy the first element of the claim, a plaintiff may allege that the defendant engaged in an unfair or deceptive trade practice by various means. *See, e.g., Campfield*, 532 F.3d at 1120 ("The CCPA specifies nearly fifty different types of deceptive trade practices."). For instance, a plaintiff may allege that a defendant knowingly made a false or misleading statement about a product. *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (citing C.R.S. § 6–1–105(1)(e)). A plaintiff may also meet the CCPA's "unfair or deceptive practice" element by showing that the defendant made a material omission about the product. *See* C.R.S. § 6–1–105(1)(u).

CCPA claims "related to false representations" are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *McDaniel v. Denver Lending Grp., Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at *6 (D. Colo. June 30, 2009) (citation omitted). Rule 9(b) requires a plaintiff to allege "the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011) (quotations omitted) (citing *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). CCPA claims based on material omissions are subject to a modified Rule 9(b) pleading standard. *See O'Connor, v. BMW of N. Am., LLC*, No. 18-cv-03190-CMA-STV, 2020 WL 2309617, at *12 (D. Colo. Jan. 7, 2020), *report and recommendation adopted*, No. 18-cv-03190-CMA-STV, 2020 WL

1303285 (D. Colo. Mar. 19, 2020). A material omission constitutes a deceptive trade practice under the CCPA if the defendant failed to "disclose material information . . . [that] was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120–21 (10th Cir. 2008) (citing C.R.S. § 6–1–105(1)(u); *see also Warner v. Ford Motor Co.*, No. 06-civ-02443-JLK-MEH, 2008 WL 4452338, at *10 (D. Colo. Sept. 30, 2008) (setting forth elements for material omission claim as (1) failure to disclose material information, (2) defendant's knowledge of information, (3) information is material, (4) non-disclosure was intended to induce consumer to purchase (citation omitted)).

***CCPA Claim & Fraudulent Misrepresentations.*** Petzl argues that Mr. Faulhaber has not met his burden under Rule 9(b)'s pleading standard regarding Petzl's allegedly fraudulent statements, and therefore he has not sufficiently pleaded a CCPA claim based on the allegedly fraudulent statements (*See* ECF No. 32 at 8). Mr. Faulhaber argues that he has alleged sufficient factual content to satisfy Rule 9(b) and provide Petzl with notice of his CCPA claim based on Petzl's allegedly fraudulent misrepresentations (*See* ECF No. 41 at 7-8). The Court agrees with Petzl.

For instance, regarding the Rule 9(b)'s requirement that Mr. Faulhaber plead the "time and place" of the allegedly fraudulently statements, Mr. Faulhaber has failed to allege sufficient factual content to satisfy this requirement. The Amended Complaint alleges that Petzl made a "2012 statement" regarding "recommended non-use[s,]" and further alleges that Mr. Faulhaber apparently bought the Shunt in August 2021 after consulting with the Petzl Expert at some unnamed point before or during August 2021 (*See, e.g.,* ECF No. 30 at 9, 11 ¶¶ 53, 66). However,

allegations that Petzl made a statement at some point in 2012 do not state with particularity when the allegedly fraudulent statements were made. *See Koch*, 203 F.3d at 1237 (concluding that alleged misrepresentation was made "during 1982 and continuing to the present time" did not provide a "sufficiently precise time frame to satisfy Rule 9(b)" (quotations omitted)). Nor is there anything to indicate when exactly the Petzl Expert—or any other alleged Petzl agent or representative—made the allegedly fraudulent statements (*See id.* at 11-12 ¶¶ 68-70).[5] Accordingly, the Court agrees with Petzl that Mr. Faulhaber has failed to allege, as he must under Rule 9(b), the "time" and "place" of the allegedly fraudulently misrepresentations (ECF No. 32 at 8).

Therefore, because Mr. Faulhaber must satisfy all of Rule 9(b)'s pleading requirements, the Court need not determine whether the Amended Complaint has satisfied Rule 9(b)'s remaining requirements. *See George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (stating that under Rule 9(b) a plaintiff must set forth the "time, place, *and* contents of the false representation, the identity of [the speaker] and the consequences thereof" (quotations omitted) (emphasis added). For these reasons, Mr. Faulhaber has not alleged sufficient factual content to show that Petzl engaged in an unfair or deceptive trade practice by making fraudulent statements. *See McDaniel*, 2009 WL 1873581, at *6. Therefore, dismissal of his CCPA claim based on a theory of alleged fraudulent misrepresentations is warranted. *See Donna*, 2015 WL 9456325, at *3 ("If all elements of a CCPA claim are not met, the claim fails as a matter of law." (citations omitted)).

***CCPA & Material Omissions.*** Regarding Mr. Faulhaber's second theory of CCPA liability, Petzl does not address the modified Rule 9(b) standard the Court applies in assessing Mr.

---

[5] Nor, for that matter, does Mr. Faulhaber identify with particularity the purported "Petzl Expert."

Faulhaber's claim under this theory, arguing instead that Mr. Faulhaber's CCPA claim fails under the Rule 9(b) standard discussed above (*See* ECF No. 32 at 8). Mr. Faulhaber contends that his theory that Petzl made material omissions is not subject to Rule 9(b)'s pleading standard and that, under the applicable modified standard, he survives Petzl's Motion to Dismiss (*See* ECF No. 41 at 7 n.2, 11). The Court agrees with Mr. Faulhaber that his CCPA claim based on a theory of material omissions survives Petzl's dismissal motion.

First, the Amended Complaint alleges that Petzl failed to disclose material information: namely, that the Shunt was unsafe for self-belaying and top rope solo climbing (*See, e.g.*, ECF No. 30 at 11 ¶ 64). Second, the Court agrees with Mr. Faulhaber that he has alleged that Petzl knew the Shunt was unsafe for self-belaying (*See* ECF No. 41 at 10). For instance, the Amended Complaint alleges that Petzl was aware that the Shunt was "almost exclusively used by its buyers as a fall arrest system for top rope solo climbing," as well as that a "Petzl-sponsored" author "expressly recommended" the Shunt for top rope soloing (*Id.* at 10 ¶ 59, 61). Third, information regarding the use of the Shunt for self-belaying is clearly material: Mr. Faulhaber's use of the Shunt for self-belaying—and its alleged failure to arrest his fall while self-belaying—caused his injuries (*See, eg., id.* at 12 ¶ 77). Fundamentally, the Amended Complaint alleges that Petzl was aware that the Shunt was being used for self-belaying and top rope solo climbing, and that Petzl's failure to disclose the safety risks related to self-belaying with the Shunt "misrepresented the failure danger" of the Shunt (ECF No. 30 at 8, 10-11 ¶¶ 49, 56, 64). Fourth, the Amended Complaint adequately alleges that Petzl's material omission regarding the dangers of using the Shunt for self-belaying induced Mr. Faulhaber to purchase it. According to the Amended Complaint, the Petzl Expert advertised that the Shunt was a "great device for top rope soloing,"

and Mr. Faulhaber purchased the Shunt based on the Petzl Expert's advice (*Id.* at 12 ¶¶ 70-71 (italics omitted)). For these reasons, Mr. Faulhaber has pleaded sufficient factual content to demonstrate that Petzl omitted material information regarding the Shunt's use for top rope soloing that constitutes an unfair or deceptive trade practice under the CCPA, and therefore dismissal of his CCPA claim based on a theory of material omissions is inappropriate.[6]

### d. Breach of Implied Warranty Claim

Petzl argues that Mr. Faulhaber's claim for breach of the implied warranty of fitness for a particular purpose fails for three reasons (ECF No. 32 at 12). First, that Mr. Faulhaber has not alleged that he relied on any of Petzl's representations in buying the Shunt (*Id.*). Second, that the Shunt did not have any warranty for the particular purpose of using it to top rope solo climb (*Id.*). And third, Mr. Faulhaber has not alleged, as he must, a "lack of exclusion of warranty" (*Id.* at 13). Mr. Faulhaber contends that he has adequately pleaded an implied warranty claim because Petzl markets the Shunt for fall arresting, and that it had an implied warranty for use of the Shunt as a fall arrester (ECF No. 41 at 12-13). The Court considers, and rejects, Petzl's arguments.

To set forth a claim for implied warranty of fitness for a particular purpose, a plaintiff "must demonstrate that: a) the product was to be used by the buyer for a particular purpose different

---

[6] Petzl makes additional arguments that Mr. Faulhaber cannot meet his burden of pleading additional elements of a CCPA claim. For instance, Petzl argues that Mr. Faulhaber cannot allege that the Shunt caused his injuries (ECF No. 30 at 10). The Court disagrees. Mr. Faulhaber alleges that the Petzl Expert induced him to purchase the product by way of material misrepresentations; he further alleges that the Shunt failed in a manner that was reasonably foreseeable to Petzl, and that the Shunt's failure resulted in the injuries he suffered (*See* ECF No. 30 at 1-2, 13-14 ¶¶ 2-4, 80-81, 87). Petzl also makes a passing arguing that Mr. Faulhaber's CCPA claim based on a theory of material omissions fails because he does not allege that Petzl "knowingly" engaged in a deceptive trade practice (ECF No. 32 at 10). For the reasons set forth above, the Court disagrees. Petzl makes no additional arguments as to why dismissal of the CCPA claim based on material omissions is warranted. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1150 (D.N.M. 2010) ("The court reminds counsel that it is not its job to do counsel's work of organizing or formulating a party's arguments." (citation omitted)).

from its ordinary purpose; b) the seller knew of the buyer's particular purpose; c) the seller knew that the buyer was relying on the seller's skill to provide a product that would satisfy the particular purpose; and d) the buyer in fact relied on that skill." *Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.*, 983 F. Supp. 948, 955–56 (D. Colo. 1997) (citing C.R.S. § 4–2–315). "An implied warranty of fitness for a particular purpose is created if the seller knows that the buyer is relying on its expertise to provide a suitable product for its needs." *Fiberglass*, 983 F. Supp. at 956 (citing § 4–2–315). "To exclude the implied warranty of fitness for a particular purpose, [a] disclaimer must be by a writing and conspicuous." *Haynes Mech. Sys., Inc. v. Bluon Energy, LLC*, No. 18-CV-03004-KLM, 2021 WL 3128652, at *10 (D. Colo. July 23, 2021) (citing C.R.S. § 4–2– 316(2)).

First, the Amended Complaint adequately alleges that Mr. Faulhaber relied on the seller's skill in purchasing the Shunt. For instance, Mr. Faulhaber alleges that he consulted with Petzl's Expert and bought the Shunt "specifically for top rope soloing on advice from [the] 'Expert' acting as Petzl's agent or marketer" (ECF No. 30 at 11-12 ¶¶ 67, 71, 76).[7] The Amended Complaint also alleges that the Petzl Expert advertised and reviewed the Shunt for "top rope soloing" (*Id.* at 12 ¶ 69 (quotations omitted)). Accordingly, Mr. Faulhaber has alleged sufficient factual content to demonstrate that he relied on the seller's skill and judgment in purchasing Petzl's Shunt. *See, e.g., Fiberglass*, 983 F. Supp. at 957 (finding that plaintiff's reliance on defendant's agent "as a person with superior knowledge" about product warranted denial of summary judgment on implied warranty of fitness for particular purpose claim).

---

[7] Accepting the Amended Complaint's allegations as true and interpreting them in the light most favorable to Mr. Faulhaber, *see Mayfield*, 826 F.3d at 1255, Mr. Faulhaber has alleged that the "Petzl Expert" was the Shunt's seller. According to the Amended Complaint, Mr. Faulhaber bought the Shunt "on advice from this 'Expert' acting as Petzl's agent or marketer *selling the device* for the *benefit of Petzl*" (ECF No. 30 at 12 ¶ 71 (emphasis added)).

Second, Mr. Faulhaber has adequately alleged that he purchased the Shunt for the particular purpose of top rope solo climbing (ECF No. 30 at 12 ¶ 71). He further alleges that, although Petzl knew the Shunt was used for top rope solo climbing and self-belaying, it marketed the Shunt as a fall arresting device allegedly intended to be used only for "backing up traditional two-person belaying" (ECF No. 30 at 8 ¶ 50). Accordingly, Mr. Faulhaber has alleged that he purchased the Shunt with the intention to be used for a particular purpose—top rope solo climbing—that differed from the Shunt's "ordinary purpose" for use in two-person belaying as marketed by Petzl beginning in 2017 and 2018 (*See id.* at 8-9 ¶ 50, 54-55). *See Connell Solera, LLC v. Lubrizol Advanced Materials, Inc*., 584 F. Supp. 3d 980, 987 (D. Colo. 2022) ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability . . . ." (quoting Colo. Rev. Stat. § 4-2-315 cmt. 2)).

Third, and contrary to Petzl's argument, Mr. Faulhaber is not required to plead a "lack of exclusion of warranty" to state a plausible implied warranty claim (ECF No. 32 at 13). *See also Fiberglass*, 983 F. Supp. at 955–56. Whether an exclusion is fatal to a plaintiff's implied warranty claim is a separate inquiry from whether the plaintiff has plausibly alleged the elements to set forth a plausible implied warranty claim. *See id.*; *see also United States Welding, Inc. v. Tecsys, Inc*., No. 14-CV-00778-REB-MEH, 2014 WL 10321666, at *18 (D. Colo. Dec. 1, 2014), *report and recommendation adopted sub nom. United States v. Tecsys, Inc*., No. 114CV00778REBMEH, 2015 WL 5174227 (D. Colo. Sept. 3, 2015) ("[The disclaimer] also properly disclaims such warranties; *in addition*, the [p]laintiff fails to allege the elements necessary to state a claim for

17

breach of implied warranty for fitness for a particular purpose." (citing *Fiberglass*, 983 F. Supp. at 955–56). Accordingly, Petzl errs in arguing that dismissal of Mr. Faulhaber's implied warranty claim is necessary simply because he has failed to plead a "lack of exclusion of warranty" (ECF No. 32 at 13).

As such, the Court rejects the three arguments Petzl advances regarding the dismissal of Mr. Faulhaber's claim for breach of the implied warranty of fitness for a particular purpose.[8] As such, Mr. Faulhaber's implied warranty claim survives Petzl's dismissal motion.

* * *

For the reasons set forth above, the Court grants Petzl's dismissal motion as to Mr. Faulhaber's CCPA claim based on a theory of fraudulent misrepresentations, but denies Petzl's dismissal motion as to the applicability of the misuse defense, the procedural impropriety of Mr. Faulhaber's Amended Complaint, the plausibility of his CCPA claim based on a theory of material omissions, and the plausibility of his breach of implied warranty claim.

**B. Petzl's Motion to Strike**

Petzl moves to strike Mr. Faulhaber's class action allegations in the Amended Complaint (*See generally* ECF No. 33). According to Petzl, Mr. Faulhaber has failed to allege several necessary requirements under Federal Rule of Civil Procedure 23 for this case's two putative classes: the class of consumers who purchased the Shunt since September 19, 2018 (the "Purchaser Class"), and the class of consumers injured in the course of using Petzl Shunts "as a fall arrester

---

[8] In support of its arguments, Petzl also references arguments made in its original Motion to Dismiss Mr. Faulhaber's original Complaint (ECF No. 32 at 13; *see also* ECF No. 17). The Court does not consider these arguments, however, because they are moot in light of the filing of Mr. Faulhaber's operative Amended Complaint and Petzl's subsequent and operative Motion to Dismiss (ECF Nos. 30, 32). Similarly, the Court does not consider the "warranty" Mr. Faulhaber references in his Response, given that he has not attached a copy of any warranty to his Amended Complaint or to any subsequent court filing.

device while self-belaying" (the "Injury Class") (ECF No. 30 at 20 ¶ 126). Having considered the Amended Complaint, Petzl's Motion to Strike and related briefing, and relevant legal authority, for the reasons set forth below the Court agrees with Petzl and strikes Mr. Faulhaber's class action allegations.

### 1. Legal Standard

To certify a class action, a plaintiff must satisfy all of Federal Rule of Civil Procedure 23(a)'s requirements and also satisfy one of Rule 23(b)'s provisions. *See, e.g., Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014). Although courts typically assess the viability of class claims at the certification stage, district courts "are permitted to make such determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot be maintained." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (citation omitted); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs."). In making this determination, courts apply the same standards applied at the certification stage, asking whether a complaint's allegations satisfy Federal Rule of Civil Procedure 23's requirements. *See, e.g., Young v. Standard Fire Ins. Co.*, No. 21-35777, 2023 WL 21465, at *1 (9th Cir. Jan. 3, 2023) ("A decision to grant a motion to strike class allegations . . . is the functional equivalent of denying a motion to certify a case as a class action." (quotations omitted)); *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 2675 (2022) (determining that district court may grant motion to strike class claims because "[t]his is consistent with Rule 23(c), which governs

class-action certification"); *Id.* at 1094 (concluding district court abused its discretion by denying motion to strike without considering whether plaintiff "could bring a class action under Rule 23(b), as it [was] apparent from the pleadings that the class [could not] be certified" under Rule 23(b)(2) (quotation omitted)).

"A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Cnty. of Dorchester, S.C. v. AT & T Corp.*, 407 F. Supp. 3d 561, 565–66 (D.S.C. 2019) (quotations omitted); *see also* 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.) ("It seems like the sensible approach . . . is to permit class allegations to be stricken at the pleading stage—in part or in their entirety—if it is apparent from the pleadings that the class cannot be certified or that the definition of the class is overbroad." (footnote omitted)). Under Federal Rule of Civil Procedure 12(f), if it is "obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis . . . [courts may] delete the complaint's class allegations." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (quotations omitted). Striking class allegations is a "drastic remedy" that terminates the "class aspects" of litigation before plaintiffs are permitted to "complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (quotations omitted).[9] The movant bears the burden of "conclusively" showing that a plaintiff "will be unable to establish facts that would make class treatment appropriate."

---

[9] There is some dispute as to whether motions to strike class allegations are best analyzed under Rule 12(f). *See, e.g., Ramsay v. Frontier, Inc.*, No. 19-CV-03544-CMA-NRN, 2020 WL 4557545, at *24 (D. Colo. July 30, 2020), *report and recommendation adopted*, No. 19-CV-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19, 2021) (discussing analyses of motions to strike brought under Rule 12(f) and Rule 12(a)(1)(D)). The Court agrees with *Ramsay* and other courts that motions to strike class allegations are best brought—as Petzl does here—under Rule 12(f) (ECF No. 33 at 4). *See also Ramsay*, 2020 WL 4557545, at *24; *Manning*, 725 F.3d at 59 ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." (citations omitted)).

*Ramsay*, 2020 WL 4557545, at *24 (citation omitted); *see also Wornicki v. Brokerpriceopinion.com, Inc*., No. 13-CV-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015) (placing burden on defendant to show that plaintiffs cannot establish facts "that would make class treatment appropriate").

### 2. The Purchaser Class

Petzl contends that the Purchaser Class, as currently pleaded, is "not ascertainable as it is overbroad" (ECF No. 33 at 6 (capitalization omitted)). Therefore, Petzl argues, Mr. Faulhaber's Purchaser Class allegations must be stricken because they do not satisfy Rule 23's requirements (*Id.* at 6-7). Mr. Faulhaber contends that the Purchaser Class is "cognizable," and that Petzl errs in characterizing the Purchaser Class as "overbroad" (*See* ECF No. 38 at 6). The Court agrees with Petzl that the Purchaser Class is not ascertainable.

Federal Rule of Civil Procedure 23 does not impose an explicit ascertainability requirement. *See* Fed. R. Civ. P. 23. However, "[a]lthough not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards v. Zenimax Media Inc*., No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (quotation omitted); *see also Cherry v. Dometic Corp*., 986 F.3d 1296, 1302 (11th Cir. 2021) ("Ascertainability is an implied prerequisite of Rule 23." (citation omitted)). To satisfy the "ascertainabiltiy" requirement, a class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Tarrify Properties, LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022) (quotation omitted).

Mr. Faulhaber's proposed Purchaser Class is not ascertainable. Mr. Faulhaber defines the Purchaser Class as follows:

> All persons who purchased a Petzl Shunt from September 19, 2018
> through and including Certification of the Class

(ECF No. 30 at 20 ¶ 126(a)). The Court agrees with Petzl that the Purchaser Class is not ascertainable based on this overbroad class definition. For instance, the Purchaser Class definition does not distinguish between class members who experienced the Shunt's alleged defect and though who did not (ECF No. 33 at 6). Courts have concluded similarly defined classes, which do not distinguish between potential class members who have been injured and those who have not, are overbroad or not ascertainable. *See, e.g., Edwards*, 2012 WL 4378219, at *5 (finding class definition was overbroad because it included individuals who "presumably purchased [a product] from anyone, anywhere, at any time regardless of whether he or she was ever injured by or even experienced the alleged [d]efect"); *Ramsay*, 2020 WL 4557545, at *24 (concluding that a proposed class that included all airline passengers in sexual assault and emotional distress claim, "whether they ha[d] been sexually assaulted or not, and who would not be entitled to any injunctive relief regardless, [was] wildly overbroad" (citation omitted)). The Court finds the reasoning of these cases persuasive. *See also Van W. v. Midland Nat. Life Ins. Co*., 199 F.R.D. 448, 451 (D.R.I. 2001) ("The ascertainability requirement is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant."). Accordingly, the Purchaser Class—as currently pleaded— is overbroad, and Petzl has met its burden of showing the Purchaser Class allegations should be stricken for failure to satisfy the ascertainabiltiy requirement. *See Ramsay*, 2020 WL 4557545, at *24; *John v. Nat'l Sec. Fire & Cas. Co*., 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially

apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." (footnote omitted)). Because Mr. Faulhaber has not satisfied the ascertainability requirement, the Court need not address Petzl's remaining arguments regarding Mr. Faulhaber's failure to satisfy Rule 23's remaining requirements for the Purchaser Class.

### 3. The Injury Class

Petzl argues that the Court should strike Mr. Faulhaber's Injury Class allegations because Mr. Faulhaber's claims are fundamentally personal injury claims, and a class action "is not the superior method to address these personal injury cases" (ECF No. 33 at 14). Mr. Faulhaber contends that, in arguing that the Injury Class satisfies Rule 23(a)'s requirements, that his claims are typical of the proposed Injury Class, common questions of law predominate, as well as that adjudicating this case on an individual basis would "strain judicial resources" (ECF No. 37 at 9, 11-12). The Court agrees with Petzl that a class action is not a superior mechanism for adjudicating individuals' claims in the proposed Injury Class.

Under Federal Rule of Civil Procedure 23(b)(3), a class action must be superior to other "available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see also Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." (quotations omitted)); CGC Holding Co., LLC v. Broad & Cassel, 773 F.3d 1076, 1096 (10th Cir. 2014) (determining that class treatment is "superior" where it will achieve "economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated" (quotations omitted)). "This [superiority] analysis is related to the commonality test." Wolin, 617 F.3d at 1176.

Adjudicating the Injury Class members' claims on a class-wide basis is not superior to other methods available for adjudicating their claims. *See* Fed. R. Civ. P. 23(b)(3). Mr. Faulhaber defines the Injury Class as follows:

> All persons who were injured while employing a Petzl Shunt as a fall arrester device while self-belaying

(ECF No. 30 at 20 ¶ 126(b)). As Petzl contends, it makes little sense to adjudicate what are essentially individual personal injury cases on a class-wide basis (ECF No. 33 at 13). *See also Ramsay*, 2020 WL 4557545, at *26, *28 (concluding that where cases "were, at core, personal injury [claims]," nothing about the case "suggest[ed] that a class action would be a superior mechanism for trying these issues than individual lawsuits brought to seek personal vindication for each victim."). Indeed, and contrary to Mr. Faulhaber's argument, the nature of the Injury Class members' claims would be highly individualized. The Amended Complaint demonstrates as much, given the notable differences in Mr. Faulhaber's and Mr. Stuart's alleged injures (*See* ECF Nos. 30 at 16 ¶¶ 100-01, 37 at 9, 11-12; *but see id.* at 2 ¶ 4). This further counsels in favor of adjudicating the Injury Class members' claims on an individual, rather than class-wide, basis. *See, e.g., Soares v. Flowers Foods, Inc*., 320 F.R.D. 464, 484 (N.D. Cal. 2017) ("Class action treatment is not superior to case-by-case lawsuits because any classwide trial would be derailed by individualized inquiries . . . ."); *In re Pac. Fertility Ctr. Litig*., No. 18-CV-01586-JSC, 2020 WL 3432689, at *7 (N.D. Cal. June 23, 2020) ("Given . . . the personal and private nature of the claims, each absent class member has a strong interest in individually prosecuting an action should the member so choose." (citations omitted)); *Kohn v. Am. Hous. Found., Inc*., 178 F.R.D. 536, 544 (D. Colo. 1998) ("The proliferation of individual issues of causation and harm presents a significant potential for confusion, inefficiency, duplication, splintering of subclasses, and, indeed, individualization of

each class member . . . . [therefore] a class action is not superior given the circumstances of this case.").[10]

For the reasons set forth above, Petzl has met its burden of showing that the Amended Complaint's allegations have not satisfied Rule 23(b)(3)'s superiority requirement. *See Ramsay*, 2020 WL 4557545, at *24. Because Mr. Faulhaber has not satisfied Rule 23(b)(3)'s superiority requirement, the Court need not address Petzl's remaining arguments regarding Mr. Faulhaber's failure to satisfy Rule 23's remaining requirements for the Injury Class.[11]

\* \* \*

The Court is mindful that striking class allegations is a "drastic remedy." *Manning*, 725 F.3d at 59 (quotations omitted). Nonetheless, it is appropriate to strike class allegations where "it is apparent from the pleadings that the class cannot be certified or that the definition of the class is overbroad." 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.) (footnote omitted). For the reasons set

---

[10] The Court notes that striking the Injury Class allegations in this Order is not a merits determination regarding the underlying claims, nor does it preclude Mr. Faulhaber—should he choose not to amend his class allegations—or any putative class member from pursuing any claim against Petzl in their individual capacity. Fundamentally, "[b]ecause of the number of individual issues that would necessarily arise, common questions of law or fact do not predominate and a class action would not be superior to individual suits." *Fincher ex rel. Fincher v. Prudential Prop. & Cas. Ins. Co.*, 374 F. App'x 833, 848 (10th Cir. 2010).

[11] Mr. Faulhaber also brings claims for both the Purchaser and Injury Classes under Rule 23(b)(1)(B) (ECF No. 30 at 20 ¶ 126). As discussed above, adjudication of the Purchaser Class claims under any Rule 23(b) provision is inappropriate, given that the Purchaser Class as defined in the Amended Complaint is not ascertainable. The parties did not address the viability of Mr. Faulhaber's classwide allegations under Rule 23(b)(1)(B), which, unlike Rule 23(b)(3) does not impose a superiority requirement. *Compare* Fed. R. Civ. P. 23(b)(1)(B), *with* Fed. R. Civ. P. 23(b)(3). But the Court agrees with Petzl that adjudicating the Injury Class claims on a class-wide basis, even under Rule 23(b)(1)(B), makes little sense, given that the Injury Class claims are fundamentally personal injury claims (ECF No. 33 at 13-14). There is nothing to indicate, given the nature of Mr. Faulhaber's claims and the purposes of Rule 23(b)(1)(B)—as well as Petzl's showing that class-wide adjudication of the Injury Class claims under Rule 23(b)(3) is inappropriate—that Mr. Faulhaber's Rule 23(b)(1)(B) class allegation survives Petzl's strike motion. *See Hesse v. Sprint Spectrum, L.P.*, No. C06-0592-JCC, 2007 WL 9775533, at *2 (W.D. Wash. May 18, 2007) ("[U]nder Rule 23(b)(1)(B) certification is appropriate where individual actions by the plaintiff class would 'as a practical matter' be dispositive of other class members' interests. [Rule 23(b)(1)(B)] is largely used for the 'depleted fund' cases, which is clearly not the case here. Though 23(b)(1)(B) classes are not limited to depleted funds, the practical impediment must be more than the mere *stare decisis* impact of the [c]ourt's decision.")

forth above, Petzl has conclusively met its burden of showing that the Purchaser Class is overbroad, and that the Injury Class cannot be certified on the grounds that the Injury Class fails Rule 23(b)(3)'s superiority requirement. *See Ramsay*, 2020 WL 4557545, at *24. Accordingly, and pursuant to Federal Rule of Civil Procedure 12(f), the Court strikes Mr. Faulhaber's class allegations from the Amended Complaint. *See Manning*, 725 F.3d at 59; *see also Cnty. of Dorchester, S.C. v. AT & T Corp.*, 407 F. Supp. 3d 561, 565–66 (D.S.C. 2019) (""A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." (quotations omitted)). Given that motions to strike are generally disfavored in this context, the Court strikes Mr. Faulhaber's class allegations without prejudice.

## IV CONCLUSION

Consistent with the above analysis, the Court GRANTS in part and DENIES in part Petzl's Motion to Dismiss (ECF No. 32). The Court GRANTS Petzl's Motion to Strike (ECF No. 33). Mr. Faulhaber may, if he chooses to do so and believes he can rectify the deficiencies noted above, file an amended complaint within fourteen days of this Order.

DATED this 14th day of February 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

26